UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel ARAGON,<br><br>                        Plaintiff,<br><br>v.<br><br>DZR GROUP INC., et al.,<br><br>                        Defendants. | Case No.: 25-cv-0264-AGS-BLM<br><br>**ORDER DISMISSING IN PART THE COMPLAINT (ECF 1), GRANTING IN FORMA PAUPERIS MOTION (ECF 2), AND GRANTING LEAVE TO ELECTRONICALLY FILE (ECF 3)** |

Plaintiff Daniel Aragon's motion to proceed without paying the initial filing fee is granted. But some of his causes of action do not state a claim for relief, so those claims must be dismissed.

### IN FORMA PAUPERIS MOTION

Typically, parties instituting a civil action in a United States district court must prepay $405 in fees, including a $350 filing fee and a $55 administrative fee. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). But if granted the right to proceed in forma pauperis, a plaintiff's "action may proceed despite failure to pay the filing fees." *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

Aragon claims to have an average monthly income of $4,150.00 and one asset: a car valued at $15,500. (ECF 2, at 1–3.) But his monthly expenses total $5,038.00, and his only bank account has a negative balance of $171.50. (*Id.* at 2, 5.) Based on these facts, the Court finds that Aragon has sufficiently shown an inability to pay the initial fees. *See Blount v. Saul*, No. 21-cv-0679-BLM, 2021 WL 1561453, at *1 (S.D. Cal. Apr. 21, 2021) ("It is well-settled that a party need not be completely destitute to proceed IFP."); *see also Escobedo v. Applebees*, 787 F.3d 1226, 1228 (9th Cir. 2015) (granting IFP motion when plaintiff and his spouse earned about $1,250 per month with $2,350 in monthly expenses, no savings, and additional assets totaling $256,500).

**28 U.S.C. § 1915(e) Screening**

**A.    Legal Standard**

When reviewing an IFP motion, the court must screen the complaint and dismiss it if it "fails to state a claim." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

**B.    Aragon's Allegations**

Aragon alleges that the defendants here—a business that goes by multiple names and its owners—"regularly operate as third-party debt collectors." (ECF 1, at 3.) In January 2018, defendants "began calling" Aragon "in an attempt to collect a consumer debt" he "allegedly owed." (*Id.*) "Defendants left a voicemail" that said:

> Do not hang up. This is not a sale solicitation. This is Riley Dugan and I'm contacting you from the Legal Department of Omni Mediation Group. Our office is responsible for handling pre-legal processing and returned checks to our client. Due to the laws in your state regarding bad or hot checks, it's imperative we speak to you or the correct party as soon as possible. Please press one to speak with a live representative now or contact us immediately.

(*Id.* at 3–4.)

Defendants left another voicemail in March 2018 that said substantially the same thing, except the call was purportedly from "Omni Mediation Group and Law Offices of Mary Claire." (ECF 1, at 4.) Aragon alleges that "there is no 'Law Offices of Mary Claire' and no attorney identified as 'Mary Claire' was involved." (*Id.*)

Between 2018 and 2022, Aragon sent defendants two letters requesting that defendants "cease all contact" with him and "his associates and family." (ECF 1, at 5.)

Despite these letters, Aragon "has been contacted by defendants at least" 33 times "with generally the same message and different pretexted phone numbers." (*Id.*)

## C. Discussion

Aragon brings claims under the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692–1692p; the California Rosenthal Fair Debt Collections Practices Act, Cal. Civ. Code §§ 1788–1788.33; and the Telephone Consumer Protection Act, 47 U.S.C. § 227. (*See generally* ECF 1.)

### 1. *Fair Debt Collections Practices Act*

The Fair Debt Collections Practices Act "prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quotation marks omitted). "In order for a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have committed some act or omission in violation of the" statute. *Robinson v. Managed Accts. Receivables*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009). Aragon says he "allegedly owe[s]" a consumer debt and that defendants "regularly operate as third-party debt collectors," satisfying the first two prongs. (ECF 1, at 3); *see* 15 U.S.C. § 1692a(3), (6) (defining "consumer" as any person "allegedly obligated to pay any debt" and "debt collector" as one "who regularly collects," directly or indirectly," "debts owed or due").

As for the third prong, Aragon alleges several acts or omissions that violate the FDCPA, as discussed below. Conduct under the FDCPA is judged by the least-sophisticated-debtor standard: "If the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the Act." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

### a. *Meaningful Disclosure*

As to claim 1, Aragon alleges a failure to make a meaningful disclosure. (ECF 1, at 8.) "A debt collector may not engage in any conduct the natural consequence of which

is to harass, oppress, or abuse any person in connection with the collection of a debt," including "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). A "meaningful disclosure" "requir[es] that the caller state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call." *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1074 (E.D. Cal. 2007).

Here, the caller stated his or her name, that the caller was calling on behalf of "Omni Mediation Group," and that the group was "responsible for handling pre-legal processing and returned checks." (ECF 1, at 3–4.) "[T]he caller failed," however, "to disclose he or she was calling on behalf of a collection agency," and failed "to divulge the true nature and purpose of the call—that is, to collect a debt owed by" Aragon. *See Costa*, 634 F. Supp. 2d at 1075. Thus, Aragon has adequately alleged that defendants "violated § 1692d(6) when [they] failed to disclose [their] identity as a debt collector and the nature of the call." *See id.*; *see also Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) ("The Court concludes that defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's [debt-collecting] business."); *cf. Hart v. Credit Control, LLC*, 871 F.3d 1255, 1260 (11th Cir. 2017) ("Because the individual callers here disclosed that they were calling on behalf of" "a debt collection company," plaintiff "was provided with meaningful disclosure, and thus no violation of § 1629d(6) occurred.").

b. *Nature of the Call*

In claim 2, Aragon charges defendants with failing to disclose the nature of the calls. (ECF 1, at 9.) The FDCPA requires a debt collector to disclose in an "initial oral communication" "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C § 1692e(11). Since defendants did not disclose that they were a debt collector in their initial message, this claim also survives screening. *See Costa*, 634 F. Supp. 2d at 1076 ("In the present case, it is undisputed the messages left on plaintiff's voice mail did not disclose the caller's identity

(beyond stating her name as Elizabeth) or the nature of the call. Thus, defendant violated § 1692e(11) because the messages left for plaintiff did not convey the required information." (citations omitted)).

      c. *Continuing Collection Without Validation*

Claims 3 and 8 both allege that the defendants continued to collect debt without validation. (ECF 9, 12.) "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing" certain information pertaining to the debt. 15 U.S.C. § 1692g(a). This written notice is referred to as a "validation notice." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1099 (9th Cir. 2012). In claim 3, Aragon alleges that defendants "fail[ed] to send Plaintiff the requisite debt validation information within" 5 days "of their initial communication." (ECF 1, at 9.) So, this initial validation-notice claim survives screening.

In claim 8, Aragon also contends that defendants violated this section because they "did not validate the alleged debt when lawful written request was made" to the defendants. (ECF 1, at 12.) "If the consumer notifies the debt collector in writing within" 30 days of the initial communication "that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor," the debt collector must verify the debt. 15 U.S.C. § 1692g(b). But Aragon's letters to defendants only requested that they "cease all contact" with Aragon and with "his associates and family." (ECF 1, at 5; *see also id.* (describing a second letter asking defendants "to cease and desist contact in the same manner that was asked in the previous letter").) Aragon does not allege that he notified defendants in writing that his debt was disputed, nor that he requested a name or address in writing within 30 days after the first call. So Aragon's second validation-notice claim (claim 8) is dismissed. *See McMillan v. Bank of Am., N.A.*, No. 14CV1575-MMA BLM, 2015 WL 1942743, at *13 (S.D. Cal. Apr. 15, 2015) (dismissing because "Plaintiffs fail to allege that notification of the dispute was made in writing, or within the thirty-day period after receipt of the initial communication").

d. *Misrepresentation*

In claim 4, Aragon alleges misrepresentation. (ECF 1, at 9.) "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes the "false representation or implication that any individual is an attorney or that any communication is from an attorney." *Id.* § 1692e(3). Aragon says that the caller represented being from the "Law Offices of Mary Claire," but such an office doesn't exist and "no attorney identified as 'Mary Claire' was involved." (ECF 1, at 4.) Based on this representation, the "least sophisticated debtor" would certainly believe that "Mary Claire" is an attorney. And if, as Aragon alleges, Mary Claire does not an exist or is not an attorney, then such a representation is false. So Aragon's misrepresentation claim may proceed.

e. *Harassment*

Finally, in claim 10 Aragon brings a general "harassment" cause of action. (ECF 1, at 13.) Aragon alleges that defendants violated the FDCPA "by ignoring the cease and desist letter" and "continuing their harassment" or Aragon. (ECF 1, at 13.) "[A] debt collector may harass a debtor" in violation of the FDCPA "by continuing to call the debtor after the debtor has requested that the debt collector cease and desist communication." *Johnson v. Portfolio Recovery Assocs.*, No. CV 12 - 4261 PSG, 2013 WL 10156241, at *7 (C.D. Cal. June 24, 2013); 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."). Aragon sufficiently pleads harassment under the FDCPA.

**2. Rosenthal Act**

Aragon sues under California's Fair Debt Collection Practices Act, or Rosenthal Act, including causes of action for misrepresentation (claim 6), failure to validate debt following written request (claim 7), and harassment (claim 10). California's law "mimics or incorporates by reference the FDCPA's requirements" and "makes available the FDCPA's remedies for violations." *Riggs*, 681 F.3d at 1100; *see also* Cal. Civ. Code § 1788.17

("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [the FDCPA], inclusive, of, and shall be subject to the [FDCPA] remedies[.]"). So whether an act violates California law "turns on whether it violates the FDCPA." *Riggs*, 681 F.3d at 1100. Thus, for the reasons stated above, all of Aragon's California claims survive except for the debt-verification claim (claim 7). *See* Cal. Civ. Code § 1788.52(c) ("A debt buyer shall provide" debt-verification information "within 15 calendar days of receipt of a debtor's written request for information regarding the debt or proof of the debt.").

### 3. *Telephone Consumer Protection Act*

Finally, Aragon claims defendants violated the Telephone Consumer Protection Act by using "an artificial or prerecorded voice to deliver a message without" consent (claim 5) and by "transmit[ting] misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value" (claim 9). (ECF 1, at 10, 12.) As to the former, Aragon adequately pleads that defendants used an artificial or prerecorded voice as evidenced by the message's instruction to "press one to speak with a live representative." (ECF 1, at 4); *see also Davis v. Rockloans Marketplace, LLC*, No. 23-2593, 2024 WL 4345293, at *1 (9th Cir. Sept. 30, 2024) ("[A] plaintiff may state a TCPA claim by alleging the use of an artificial or prerecorded voice."). As for the latter, Aragon says that defendants "use either anonymous phone numbers or they use phone numbers that either do not belong to them or do belong to them but are spoofed" "to show a different area code from that of the defendants" to "defraud" him. (ECF 1, at 5–6, 10.) This is enough to survive at this stage. *See United States v. Rhodes*, No. CV 21-110-M-DLC-KLD, 2022 WL 2466796, at *7 (D. Mont. Apr. 1, 2022) (finding the plaintiff "alleged facts demonstrating that [defendant] knowingly caused a caller identification service to transmit misleading or inaccurate caller ID information" when the defendant used "caller IDs that matched the area code of the call's recipient rather than his own"), *report and recommendation adopted*, No. CV 21-110-M-DLC, 2022 WL 17484847 (D. Mont. Dec. 7, 2022).

## CONCLUSION

Aragon's motion to proceed in forma pauperis is **GRANTED**. Aragon's debt-verification causes of action (claims 7 and 8) are **DISMISSED with leave to amend**. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (quotation marks omitted)). All other claims survive screening. Any amended complaint must be filed by **May 8, 2025**.

Since Aragon represents that he has the proper equipment to file electronically, and that he agrees to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual (*see* ECF 3), the motion for leave to file electronically is **GRANTED**.

Dated:  April 10, 2025

Hon. Andrew G. Schopler
United States District Judge